ALEX PLUHOWSKY *v.* CITY OF NEW HAVEN

ANNA PLUHOWSKY *v.* CITY OF NEW HAVEN ET AL.

KING, C. J., MURPHY, SHEA, ALCORN and COMLEY, Js.

Argued November 7, 1963—decided January 28, 1964

*A. Frederick Mignone,* with whom, on the brief, was *Harold M. Mulvey,* for the appellant (defendant in the first case) and for the appellees (named defendant et al. in the second case).

*Irving Sweedler,* with whom was *James W. Curran,* for the appellee (plaintiff in the first case).

*Sherman Rosenberg,* for the appellant (plaintiff in the second case).

*Kevin T. Gormley,* with whom, on the brief, was *Martin E. Gormley,* for the appellee (defendant Alex Pluhowsky in the second case).

KING, C. J. Although these two cases arose out of the same accident, were tried together, and in many respects are factually identical, the respective causes of action are entirely different. It seems

best, however, to consider them in a single opinion.

At about 6:30 on the morning of Monday, March 24, 1958, Alex Pluhowsky, the plaintiff in the first case, was operating his automobile southerly along State Street in New Haven. His wife, Anna, the plaintiff in the second case, was a passenger in the front seat. For several years they had driven together, each working day, along the same route, back and forth between their home in Hamden and their separate places of employment in New Haven.

On the morning in question a catch basin located in the curbing on the west side of State Street, about opposite the entrance of Albert Street, failed adequately to function. This in turn caused a stoppage of water which would otherwise have flowed into the catch basin and been carried away through the city's storm-sewer system. This condition had existed since at least the morning before. By Monday morning, the accumulation of water had increased in area, was dark and dirty in color, and, in diminishing depth, extended from the top of the curbing on the west side of State Street easterly into the center of the street, a distance of about twenty-one feet, covering both southbound lanes. The maximum length of the submerged area, from north to south along the west curbing, was over thirty feet.

The court found that a film of ice had formed over the wet surface of the highway south of the accumulated water, where it had been splashed or tracked by cars, but that in other areas the highway was clear and dry. In oral argument the defendant city admitted that there was no ice under the accumulation of water. Alex, at a distance of six to seven feet out from the west curbing, drove his car through the water, and lost control of the car,

which crashed into a utility pole located about 300 feet south of the catch basin.

## I

We turn first to Alex' case against the city of New Haven as the sole defendant. Recovery was sought in a common-law action of nuisance and in an action under the defective highway statute, General Statutes § 13-11. Since the court allowed recovery under the defective highway statute, it did not pass on the claim of nuisance, and nuisance is not involved in the appeal in Alex' case. See cases such as *Bacon* v. *Rocky Hill,* 126 Conn. 402, 405, 11 A.2d 399.

The statutory notice, required as a condition precedent to recovery under the defective highway statute, as well as the allegations of the complaint, relied solely on the accumulated water, as distinguished from any snow or ice, as the claimed defective condition and the cause of the accident. Alex correctly concedes that the only defective condition on which he could recover is the defective condition caused by the water and that he cannot recover for any defect consisting of snow or ice. The court found that Alex lost control of his car because of, and while going through, the accumulation of water.

This finding is attacked as without support in the evidence. At the trial, Alex testified that he did not lose control of the car while going through the water, that he went through it without difficulty, and that the loss of control did not occur until the car was on the film of ice south of the water. Manifestly, this testimony gave no support to the court's finding that Alex lost control when, and because, the car was going through the water. The only evidence

supporting the court's finding as to the water causing the loss of control was a motor vehicle accident report filed by Alex almost four years after the accident and less than one month before trial. In this he stated that "my car struck a body of water on the highway and caused me to lose control and I struck the telephone pole". This accident report was admissible as an admission against Alex in Anna's case against him. *Guarnaccia* v. *Wiecenski,* 130 Conn. 20, 25, 31 A.2d 464; *Tappan* v. *Knox,* 115 Conn. 508, 517, 162 A. 7; *Whiteman* v. *Al's Tire & Service Garage, Inc.,* 115 Conn. 379, 384, 161 A. 519. It was not, as against a proper objection, admissible in his favor in his case against the city. As such, it would be a mere self-serving statement, not even composed until shortly before trial. *State* v. *McCarthy,* 133 Conn. 171, 181, 49 A.2d 594. Actually, it was admitted as an exhibit in Anna's case, in the course of the direct examination of Alex when he was called as a witness by Anna.

The mere fact that both Alex' and Anna's cases were being tried together would not, without more, make an exhibit admitted in Anna's case also an exhibit in Alex' case, especially where, as here, the exhibit was clearly inadmissible in Alex' case. An inspection of the transcript discloses that at the outset of the trial the question as to the use of evidence in the two cases was discusssed by court and counsel. Although the oral stipulation, made at that time, lacks desirable clarity, it seems to have been confined to photographs which, it was agreed, were to be treated as exhibits in both cases. Of course, this motor vehicle report, although admitted as an exhibit in Anna's case, was not a photograph and, therefore, was not available as evidence, nor admitted as an exhibit, in Alex' case under the terms

of the stipulation. This conclusion is fortified by the fact that it is incredible that counsel could have intended to stipulate that an exhibit properly admitted in one case should automatically be treated as an exhibit in another case in which it was wholly inadmissible.

Under the peculiar circumstances, the court's crucial finding that Alex lost control of his car when, and because, he was driving through the accumulated water is without evidential support and cannot stand. Without this finding, the judgment in Alex' favor is erroneous, and a new trial must be granted in Alex' case against the city.

## II

We turn now to a consideration of the second case. Almost a year after the accident, Anna instituted a common-law action, in three counts, against her husband, the city of New Haven, Richard C. Lee, Arthur T. Barbieri, Anthony Carbone and Domenick Mercugliano, seeking damages for personal injuries claimed to have been sustained as a result of the collision of the car with the pole. The finding that Alex lost control of his car when, and because, it was going through the accumulation of water can be supported by his motor vehicle report as an admission by him in Anna's case against him. Since no attempt was made to limit it to Anna's case against Alex as distinguished from her case against the other defendants, we may assume, for the purposes of this appeal at least, that it was available, although hearsay, in proof of the matter stated in it, for whatever it was worth on its face, in Anna's case against the other defendants. *Sizer* v. *Lenney,* 146 Conn. 457, 458, 151 A.2d 889; *Sears* v. *Curtis,* 147 Conn. 311, 316, 160 A.2d 742. Consequently, in Anna's

case, against all defendants therein, it may be assumed that the accumulated water was the cause of the collision with the pole as claimed by Anna and as found by the court. From a judgment for all defendants Anna took this appeal.

## A

The first count ran against Alex only and sounded in common-law negligence. Whether Anna sustained her burden of proving that Alex was negligent in any of the respects claimed in her complaint, including those particularly stressed by her in her brief, was a conclusion to be drawn from the subordinate facts. The court's conclusion that she had not sustained that burden was a reasonable one and cannot be disturbed.

The plaintiff makes much of the court's finding that Alex had driven through a similar, although less extensive, accumulation of water in the same location the day before on his way to church, and of the claimed fact that he therefore had knowledge of it. This knowledge would not make Alex' conduct in driving through the water on Monday negligent as matter of law. See cases such as *Clark* v. *Torrington,* 79 Conn. 42, 44, 63 A. 657; *L'Heureux* v. *Hurley,* 117 Conn. 347, 353, 168 A. 8; *Rescigno* v. *Rosner,* 124 Conn. 253, 255, 198 A. 751; *Brosz* v. *Danbury,* 140 Conn. 279, 281, 99 A.2d 136.

The plaintiff claims error in a ruling excluding a question asked of Alex on his direct examination as to his knowledge that clogging of the catch basin and a resulting accumulation of water was a frequent and recurring condition at about the same season every year, and that he had observed this condition for many years. In view of the finding just mentioned as to Alex' having driven through the

water the day before, there is no reason to believe that the evidence excluded would have induced the court to find negligence on Alex' part, so as to have changed the result. Thus the ruling, even if erroneous, was not shown to have probably been harmful. See cases such as *Casalo* v. *Claro,* 147 Conn. 625, 630, 165 A.2d 153; *Sears* v. *Curtis,* supra.

## B

The second count, while confusingly drawn in that much irrelevant matter was, without reason, incorporated from the first count, tolerantly construed purports to allege, against the city of New Haven only, a common-law action in negligence as well as one in nuisance. This count against the city is hardly mentioned in the plaintiff's brief, and any assignments of error addressed thereto consequently could well be treated as abandoned. *Fleischer* v. *Kregelstein,* 150 Conn. 158, 159, 187 A.2d 241. Moreover, so far as defective conditions in highways are concerned, there is no liability on the part of a municipality in a common-law action of negligence; nor is there liability in a common-law action of nuisance, unless the nuisance was created by the positive act of the municipality. See cases such as *Jacen* v. *East Hartford,* 133 Conn. 243, 245, 50 A.2d 61; *Bacon* v. *Rocky Hill,* 126 Conn. 402, 404, 407, 11 A.2d 399; *Federman* v. *Stamford,* 118 Conn. 427, 429, 172 A. 853; *Rogers* v. *Meriden,* 109 Conn. 324, 327, 146 A. 735; *Cone* v. *Hartford,* 28 Conn. 363, 373.

Although the plaintiff offered some evidence of the inadequacy of the catch basin and storm-sewer system, the city engineer testified that the system was adequate, efficient and in conformity with accepted standards. The court found that the catch basin was adequate if it was not clogged by debris.

The excluded evidence as to recurrent flooding in previous years, even if admitted, would not have justified an affirmative finding of inadequacy or defective design so as to constitute a nuisance under the rule of cases such as *Hoyt* v. *Danbury,* 69 Conn. 341, 351, 37 A. 1051, and *DeLahunta* v. *Waterbury,* 134 Conn. 630, 634, 59 A.2d 800. Especially is this so since previous instances of flooding, as far as appears, may also have been caused by debris clogging the catch basin. See cases such as *Langin* v. *New Britain,* 149 Conn. 431, 433, 180 A.2d 626.

The court's conclusion that the cause of the flooding was debris clogging the catch basin and that this clogging did not constitute an actionable nuisance cannot be changed. This clogging, of course, was not brought about by the positive act of the city or any of its officials or employees. As far as appears, the debris was swept over the catch basin by the force of the water. Thus no liability in nuisance was proven on the part of the city. *Bacon* v. *Rocky Hill,* supra, 407. Judgment was properly rendered for the city of New Haven on the second count.

## C

The third count presents even more confusion than the second count. All paragraphs of each of the first two counts were, without reason, incorporated into this third count. Construed tolerantly, it purports to set forth a cause of action against the individual defendants, other than Alex. Lee was mayor, Barbieri was in charge of the public works department, Carbone was superintendent of streets and Mercugliano was superintendent of sewers.

There is nothing to indicate that any of these officials directly or indirectly caused this catch basin to become clogged, either by any personal

action or by any order given to any subordinate officer or employee. That the care of highways, including the prevention of accumulations of water upon them by the use of catch basins leading into storm sewers, is, as the defendants pleaded, a governmental function is not open to question. *Cone* v. *Hartford,* supra; *Rogers* v. *Meriden,* supra; *Spitzer* v. *Waterbury,* 113 Conn. 84, 87, 154 A. 157; *Federman* v. *Stamford,* supra. For acts or omissions occurring in the performance of such a function an official of the municipality will not be personally liable so long as he acts in good faith, in the exercise of an honest judgment, and not maliciously, wantonly or in abuse of his discretion. *Wadsworth* v. *Middletown,* 94 Conn. 435, 439, 109 A. 246; *Stiebitz* v. *Mahoney,* 144 Conn. 443, 448, 134 A.2d 71; see 2 Harper & James, Torts § 29.10.

The plaintiff concedes in her brief that it was essential to her recovery against these individual defendants that she prove that their duties with respect to the highway and catch basin were "ministerial". The word "ministerial" under our law refers to a duty which is to be performed by an official "in a given state of facts, in a prescribed manner, . . . without regard to or the exercise of his own judgment [or discretion] upon the propriety of the act being done". *Blake* v. *Mason,* 82 Conn. 324, 327, 73 A. 782. An example of such a ministerial duty is that of a town clerk to record an instrument which he has accepted for recordation in the land records, as in *Willet* v. *Hutchinson,* 2 Root 85, 86. A ministerial duty on the part of an official often follows a quasi-judicial determination by that official as to the existence of a state of facts. Although the determination itself involves the exercise of judgment, and therefore is not a ministerial act, the

duty of giving effect, by taking appropriate action, to the determination is often ministerial. *Blake* v. *Brothers,* 79 Conn. 676, 678, 66 A. 501; *Blake* v. *Mason,* supra. In *Leger* v. *Kelley,* 142 Conn. 585, 589, 116 A.2d 429, the determination by the motor vehicles commissioner as to whether the car in question was manufactured after July 1, 1937, and, if so, whether it was equipped with a type of safety glass approved by him, was quasi-judicial and not ministerial. After that determination had been made, the commissioner's duty of registering or refusing to register the car, according to the determination which he had reached, was ministerial, since the commissioner had no discretion in the matter. An analogous problem arises in actions of mandamus as illustrated in cases such as *American Casualty Ins. & Security Co.* v. *Fyler,* 60 Conn. 448, 459, 22 A. 494.

In the present case, the court did not find that, by virtue of their respective offices, the mayor of New Haven, the head of the public works department, the superintendent of streets or the superintendent of sewers was under any ministerial duty to correct, or to order corrected, this particular claimed defective condition. Unless the duty of these defendants was ministerial, the plaintiff, even if she proved negligence, would have established no liability on their part, under the rule of cases such as *Ely* v. *Parsons,* 55 Conn. 83, 101, 10 A. 499; *Wadsworth* v. *Middletown,* supra, 441; and *Stiebitz* v. *Mahoney,* supra; and see 2 Harper & James, Torts § 29.10.

The plaintiff claims that the ministerial character of the duties of these defendants with respect to this highway and catch basin was admitted in the pleadings and that consequently the court as matter of

law was compelled so to find. This claim is more ingenious than persuasive. The only count properly directed against these individual defendants was the third, and in paragraph thirty-two of that count it was alleged that all of these defendants were charged "with the ministerial duty" of supervising the catch basin and highway. This allegation was expressly denied in paragraph three of the defendants' answer to the third count, and this denial left the burden of proof on the plaintiff. While the defendants' pleadings should have been more carefully drawn, the shortcomings of the complaint, as previously noted, preclude any such technical construction of another portion of the defendants' answer as the plaintiff seeks to induce us to put upon it.

## III

There is error in Alex' case, the judgment therein is set aside and a new trial is ordered. There is no error in Anna's case.

In this opinion the other judges concurred.